## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Gypsy Rogers, on behalf of himself and all other similarly situated, | Civil No. 14-1816 (DWF/SER) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| The City of Hopkins, | |
| Defendant. | |

A.L. Brown, Esq., Capitol City Law Group, LLC, Saint Paul, Minnesota, counsel for Plaintiffs.

Nathan Midolo, Esq. and Susan M. Tindal, Esq., Iverson Reuvers Condon, Bloomington, Minnesota, counsel for Defendant.

## INTRODUCTION

This case arises out of "service fees" that Defendant City of Hopkins (the "City") charged to Plaintiff Gypsy Rogers ("Rogers") after Rogers failed to allow the City to upgrade the water meters in his duplex property. This matter is before the Court on the City's Motion for Summary Judgment (Doc. No. 11) and Rogers's Motion for Class Certification (Doc. No. 16). For the reasons set forth below, the Court grants the City's motion and denies Rogers's motion.

## BACKGROUND

The material facts in this case are not in dispute.[1] Rogers owns a duplex property in Hopkins, Minnesota (the "Property"). (Doc. No. 24 ("Second Midolo Aff.") ¶ 3, Ex. 1 at 2.) Each unit in the Property has a separate water meter. (*See id.*; Doc. No. 1 ("Compl.") ¶ 16.) Rogers does not reside at the Property but rather rents the units to tenants. (*See* Second Midolo Aff. ¶ 3, Ex. 1 at 2; Compl. ¶¶ 14–15.)

In 2011, the City began to upgrade outdated water meters in response to Federal Communications Commission ("FCC") rules requiring the City to upgrade its "radio read" water meter reading system by January 1, 2013. (Doc. No. 22 ("Brown Decl.") ¶ 3, Ex. A at 9, 13; *see also* Doc. No. 14 ("Midolo Aff.") ¶ 9, Ex. 7; Compl. ¶¶ 5–6.) If the City did not upgrade water meters by that date, the outdated meters could have been subject to harmful interference from other systems utilizing radio waves, or could have created such interference for other systems. (Midolo Aff. ¶ 9, Ex. 7; Brown Decl. ¶ 3, Ex. A at 9.) Further, the FCC could have imposed fines on the City for non-compliance with its rules. (Midolo Aff. ¶ 9, Ex. 7; Brown Decl. ¶ 3, Ex. A at 9.)

To implement the upgrades, the City sent residents and property owners letters indicating that it was in the process of upgrading its water meter reading system and

---

[1] In a footnote, Rogers asks this Court to strike the Affidavit of Nathan C. Midolo (Doc. No. 14). (Doc. No. 21 at 8 n.26.) Because Rogers failed to develop this argument, only included it in a footnote, and did not file a motion to strike, this Court declines to address the issue. *See W. Va. Pipe Trades Health & Welfare Fund v. Medtronic Inc.*, 57 F. Supp. 3d 950, 983 n.18 (D. Minn. 2014) (citing *United States v. Kerr*, 752 F.3d 206, 218 (2d Cir. 2014); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)). Even if the Affidavit were stricken, the result here would be the same, as the key facts are found elsewhere in the record and are not in dispute.

requested that residents and owners give the City access to their properties to perform the upgrades. (Brown Decl. ¶ 3, Ex. A at 12–13.) On October 27, 2011; December 1, 2011; and January 3, 2012; the City sent letters to Rogers regarding the upgrades. (Midolo Aff. ¶¶ 4–6, Exs. 2–4; Brown Decl. ¶ 3, Ex. A at 12–13.) On February 22, 2012, the City sent Rogers a letter notifying him that it would impose a $100 per month "service fee" due to Rogers' failure to permit the City to upgrade the water meters in his property. (Midolo Aff. ¶ 7, Ex. 5; Brown Decl. ¶ 3, Ex. A at 13.) In addition, the letter advised Rogers to contact the City Utility Department if he believed he had received the notice "in error." (Midolo Aff. ¶ 7, Ex. 5.)

On March 22, 2012, the City sent Rogers a letter notifying him that it would begin imposing the "service fee" in April 2012. (Midolo Aff. ¶ 8, Ex. 6; Brown Decl. ¶ 3, Ex. A at 13; Compl. ¶ 7–8.) Again, the letter advised Rogers to contact the City Utility Department if he believed he had received the notice "in error." (Midolo Aff. ¶ 8, Ex. 6.) Rogers did not receive these five letters at the time they were sent, because the City sent the letters to the Property where Rogers did not reside. (*Id.* ¶¶ 4–8; Exs. 2–6; Second Midolo Aff. ¶ 3, Ex. 1 at 2.) Rogers, however, does not dispute that the City sent these five letters. (Second Midolo Aff. ¶ 4, Ex. 2 at 2–3.)

On April 2, 2012, the City began billing Rogers $100 per month per meter for failure to provide access to the two water meters in the Property. (Midolo Aff. ¶¶ 12–13, Exs. 10–11; Compl. ¶ 17.) On April 27, 2013, Rogers went to City Hall to challenge his water bill and spoke to the City's Utility Billing Clerk. (Midolo Aff. ¶ 3, Ex. 1; Brown Decl. ¶ 3, Ex. A at 11; Second Midolo Aff. ¶ 4, Ex. 2 at 2.) At that time, Rogers received

3

copies of the five letters the City sent to the Property. (Second Midolo Aff. ¶ 4, Ex. 2 at 2–3.) On May 15, 2013, Rogers allowed the City to upgrade the water meters on the Property. (Midolo Aff. ¶ 11, Ex. 9; Brown Decl. ¶ 3, Ex. A at 11.) Thereafter, the City stopped charging the "service fee" to Rogers. (Midolo Aff. ¶¶ 12–13, Exs. 10–11; Compl. ¶ 18.) In addition, the City credited $400 to Rogers's account. (Midolo Aff. ¶¶ 12–13, Exs. 10–11; Brown Decl. ¶ 3, Ex. A at 11; Second Midolo Aff. ¶ 3, Ex. 1 at 2.)

In total, the City imposed $2,800 in fees, less the $400 credit, for Rogers's failure to provide access to the water meters. (Midolo Aff. ¶¶ 12–13, Exs. 10–11; Compl. ¶ 19.) Rogers's water bill, including a portion of these fees, was added to Rogers's property taxes for 2012. (Brown Decl. ¶ 3, Ex. A at 2.) On June 7, 2013, Rogers paid his water bill, including outstanding fees, in full. (Midolo Aff. ¶¶ 12–13, Exs. 10–11; Compl. ¶ 20.)

The Hopkins City Code provides that failing to permit the City to access a water meter will result in a fine of $100 per month:

> Failure to allow the city access to the water meter for inspection or repair purposes . . . shall be considered an act of negligence and shall be subject to a fine of $100 per month . . . . A person violating this subsection is guilty of a misdemeanor and the superintendent may disconnect the water supply to such meter.

Hopkins City Code § 710.30, subd. 3.

A separate section of the City Code provides for penalties applicable to a person convicted of a misdemeanor:

> A person who violates a provision of this code is guilty of a misdemeanor unless otherwise stated within this code, and upon conviction thereof may

>be punished by a fine of not more than $1,000 and imprisonment for a term not to exceed 90 days, or both.

Hopkins City Code § 115.01. Although § 710.30, subd. 3 provides that violation of § 710.30, subd. 3, is a misdemeanor, the City never charged Rogers with a crime. (Brown Decl. ¶ 3, Ex. A at 11.)

In his Complaint, Rogers asserts three claims against the City: (I) deprivation of Eighth Amendment rights under 42 U.S.C. § 1983; (II) deprivation of Fourteenth Amendment rights under 42 U.S.C. § 1983; and (III) unjust enrichment. (Compl. at ¶¶ 21–38.) Although Rogers labels Count II as a Fifth Amendment claim, he makes clear that he alleges that the City violated the Fourteenth Amendment, which incorporates the Fifth Amendment and makes it applicable against the states. (*See* Compl. ¶ 30.)

The City now moves for summary judgment on all claims. (Doc. No. 11; Doc. No. 13.) Under Federal Rule of Civil Procedure 23, Rogers moves to certify a class of "[a]ll persons who were fined under Hopkins City Code Section 710.30, Subdivision 3, without a trial." (Doc. No. 16; Doc. No. 19.)

## DISCUSSION

### I. Summary Judgment

#### A. Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d

885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**B.  Violation of the Eighth Amendment's Prohibition on Excessive Fines**

Rogers brings a § 1983 claim alleging that the "service fees" imposed by the City constituted "excessive fines" in violation of the Eighth Amendment. (Compl. ¶¶ 21–28.) Specifically, Rogers claims that the City's $100 "service fees" were fines that were "grossly disproportional" to Rogers's failure to provide access to the water meters in the Property. (*Id.*) In his Memorandum Opposing Defendant's Motion for Summary Judgment, Rogers "concedes that claim." (Doc. No. 21 at 4.) Because Rogers has abandoned Count I, this Court grants the City's Motion for Summary Judgment as to Count I of Rogers's Complaint.

### C. Violation of the Fourteenth Amendment's Guarantee of Procedural Due Process

Rogers also brings a § 1983 claim alleging that the City's imposition of the "service fees" deprived Rogers of his property without providing proper notice or any opportunity to challenge the fees, either before or after their imposition. (Compl. at ¶¶ 29–34.) As such, Rogers alleges that the City violated the Fourteenth Amendment's procedural due process protections.[2] (*Id.*)

"[A] § 1983 procedural due process claim turns on (1) whether the state actor's decision impacted a protected liberty or property interest, and if so, (2) what process was constitutionally 'due.'" *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976)). "Due process is necessarily a flexible concept that depends on the nature of the interest and the severity of its impairment." *Id.* at 820. In determining the process due in particular circumstances, this Court considers three factors: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedures used and the likely value of additional or substitute procedures; and (3) the government's interest, including the costs of additional or substitute procedures. *Mathews*, 424 U.S. at 335.

The Court assumes without deciding that the City's imposition of the "service fees" and Rogers's payment of them constitute deprivation of Rogers's property interests, namely, his money. With that assumption, the Court turns to the question of the process constitutionally due to Rogers and finds that summary judgment is appropriate.

---

[2] Rogers does not allege that the City violated the Fourteenth Amendment's substantive due process protections. (Doc. No. 21 at 4.)

### 1. Sufficiency of Process Provided to Rogers

The City argues that the process afforded to Rogers was sufficient. Applying the *Mathews* factors, this Court agrees. First, the private interest affected by the City's imposition of the "service fees"—that is, the money Rogers paid— is meaningful. The City imposed $2,800 in fees over a 14-month period and subsequently credited $400 to Rogers's account. Considering the credit, Rogers paid $2,400 in "service fees," an amount that entitles Rogers to some level of procedural protection.

Second, under the procedures currently in place, the risk of erroneous imposition of the "service fees" is minimal. The City provided written notice to Rogers on five occasions. It sent the first notice on October 27, 2011, and it first imposed the "service fee" on April 2, 2012—more than five months later. Once the City began imposing the "service fees" against Rogers, it did so by adding the fees to Rogers's water bills. The City added Rogers's unpaid water bills, including the "service fees," to his 2012 taxes. On June 7, 2013, Rogers paid his outstanding water bill, including the "service fees." At any point after February 22, 2012, when the City notified Rogers that it would impose the "service fees," Rogers could have contacted the City to challenge the imposition of the fees. In fact, the February 22, 2012 and March 22, 2012 letters instructed Rogers to contact the City Utility Department if Rogers believed he had wrongfully received the notice of the "service fees" and provided the Department's phone number. (Midolo Aff. ¶¶ 7–8, Exs. 5, 6.) On April 27, 2013, Rogers actually challenged the imposition of the service fees in person.

Further, the City's determination of whether to assess a "service fee" against a particular water customer is nondiscretionary and, presumably, uncomplicated. It involves only a determination of whether the customer has permitted the City to access the customer's water meter. *See* Hopkins City Code § 710.30, subd. 3. Because imposition of the "service fee" does not implicate an exercise of judgment or a complex mathematical calculation, robust procedural protections are unnecessary. *See, e.g.*, *Sickles v. Campbell Cty., Ky.*, 501 F.3d 726, 730 (6th Cir. 2007) (finding risk of erroneous deprivation was "minor" where "withholding of funds involve[d] elementary accounting that ha[d] little risk of error and [wa]s non-discretionary"); *Treimert v. Cty. of Washington*, Civil No. 13-03094, 2015 WL 999869, at *7 (D. Minn. Mar. 5, 2015) (finding risk of erroneous deprivation was "virtually non-existent" where assessment of fee was dictated by statute and "entirely non-discretionary").

Third, the City's interest in imposing the "service fees" is high. Specifically, the City had an interest in imposing the "service fees" to offset costs associated with the outdated water meters. FCC rules required the City to update its water meters by January 1, 2013, and the City risked fines from the FCC if it did not comply. In addition, the process for reading the outdated meters is separate from the process for reading the updated meters, such that reading the outdated meters causes the City to incur additional time and expenses. (Brown Decl. ¶ 3, Ex. A at 8.) The outdated water meters also cause the City to incur expenses related to mailing written notices to customers with outdated meters. (*Id.* at 8–9.) Indeed, the City's interest in recovering the costs of outdated water meters could be frustrated by the expense of providing formal hearings either before or

after imposing the "service fees." *See Treimert*, 2015 WL 999869, at *7. Under *Mathews*, therefore, the process provided by the City to Rogers was adequate.

### 2. Rogers's Opportunity to be Heard

Rogers argues that the City never provided him with any opportunity to be heard and it therefore deprived him of constitutionally-required due process. This Court disagrees. First, the Constitution does not require a formal hearing in every situation where a person is deprived of a constitutionally-protected property interest. This Court, for example, recently adopted a Report and Recommendation recommending that the Court dismiss a procedural due process claim arising out of booking fees charged to the plaintiff upon his arrest. *Treimert*, 2015 WL 999869. Although the defendant county had not provided the plaintiff with a hearing regarding the booking fee, the Court found that the plaintiff received the process due to him under the Fourteenth Amendment, stressing that the county imposed the booking fee pursuant to state statute. *Id.* at *5–8.

Similarly, this Court adopted a Report and Recommendation recommending that the Court dismiss a procedural due process claim arising out of an administrative enforcement proceeding by the Minnesota Pollution Control Agency. *Solors v. Warta*, Civil No. 08-05923, 2009 WL 1010626 (D. Minn. Apr. 14, 2009). In that case, the Agency imposed a $10,000 fine against the plaintiff for his failure to secure a permit for a construction project. *Id.* at *2–3. The plaintiff had the opportunity to submit a written response before the Agency imposed the fine, but he did not receive an in-person hearing. *Id.* at *2–3, 18. Still, the Court found that the plaintiff failed to allege denial of an

opportunity to be heard. *Id.* at *18–19. In this case, as in *Treimert* and *Solors*, the Constitution did not require the City to provide Rogers with a formal hearing.

Second, Rogers had an opportunity to be heard, and he took advantage of that opportunity. Rogers visited City Hall, contested the City's imposition of the "service fees," and received a $400 credit. In these circumstances, Rogers fails to establish that he was deprived of an opportunity to be heard under the Fourteenth Amendment.

### 3. Civil Nature of the "Service Fee" Imposed on Rogers

Rogers further argues that that the "service fee" imposed by the City is a criminal fine, and Rogers is thus entitled to a criminal trial. Again, the Court disagrees. "[W]hether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction." *United States v. Ward*, 448 U.S. 242, 248 (1980). In deciding this issue, this Court applies a two-part test: (1) whether the legislature has "indicated either expressly or impliedly a preference for one label or the other"; and (2) if the statute indicates the legislature's intent to establish a civil penalty, "whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *Id.* at 248–49. In its application of the second prong of the two-part test, this Court considers seven factors:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963); *see also Ward*, 448 U.S. at 249. A statute intended to be civil should be found criminal with "only the clearest proof." *Ward*, 448 U.S. at 249.

Applying the first prong of the two-part test, this Court concludes that the Hopkins City Code evidences an intent to classify the $100 "service fee" as a civil penalty. The first sentence of Hopkins City Code § 710.30, subd. 3, provides that failure to permit the City to access a water meter is "an act of negligence and shall be subject to a fine of $100 per month." The characterization of the offending conduct as an "act of negligence" suggests that the $100 fine is civil in nature, because ordinary negligence provides a basis for civil liability, not criminal liability. *See, e.g., State v. Grover*, 437 N.W.2d 60, 63 (Minn. 1989); *Negligence*, BLACK'S LAW DICTIONARY (10th ed. 2014).

The second sentence of § 710.30, subd. 3, provides that violation of § 710.30, subd. 3, is a misdemeanor. The fact that the subdivision uses a separate sentence to characterize the offending conduct as a misdemeanor suggests that the City may charge a violator with a misdemeanor *in addition to* imposing a civil fine. Indeed, a separate section of the City Code provides penalties for misdemeanors, namely fines up to $1,000 and imprisonment for up to 90 days. Hopkins City Code § 115.01. Further, legislatures commonly impose both civil and criminal sanctions with respect to the same conduct. *See, e.g.*, *Ward*, 448 U.S. at 250. Accordingly, this Court finds that the Hopkins City Code evidences a legislative intent to classify the $100 fine provided by § 710.30, subd. 3, as a civil fine.

Next, this Court turns to the second prong of the two-part test. Taking the *Mendoza-Martinez* factors into account, this Court concludes that there is little evidence that the $100 "service fees" imposed by the City are "so punitive" as to render them criminal. The $100 "service fee" is not an "affirmative disability or restraint," such as imprisonment, and courts have historically enforced monetary sanctions through civil proceedings. *See Hudson v. United States*, 522 U.S. 93, 104 (1997). Although the punishable conduct—failing to permit access to a water meter—is a misdemeanor and the $100 "service fee" may deter consumers from refusing access to the City, the "service fee" serves purposes other than retribution and deterrence. *See id.* Namely, the "service fees" offset costs related to outdated meters that the City must incur.

Because this Court finds that the "service fees" imposed by the City against Rogers are civil, rather than criminal, this Court concludes that Rogers was not entitled to the protections the Constitution affords to criminal defendants. Accordingly, this Court holds that Rogers received the process constitutionally due to him and grants the City's Motion for Summary Judgment with respect to Count II of Rogers's Complaint.[3]

### D. Unjust Enrichment

Finally, Rogers alleges that the City was unjustly enriched when it imposed the $100 "service fees" without due process and without statutory authority. (Compl. ¶¶ 35-38.) The City argues that it was not unjustly enriched because it did not act

---

[3] Because the Court grants summary judgment as to Count II for the reasons stated, it does not reach the City's alternative arguments.

illegally in imposing the "service fees." Rogers does not address his unjust enrichment claim in his brief. The Court agrees with the City.

"To establish a claim for unjust enrichment under Minnesota law, the plaintiff must 'show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay.'" *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 553–54 (8th Cir. 2008) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)). The plaintiff must show "that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Id.* (quoting *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)).

As discussed above, the City provided sufficient process to Rogers under the Fourteenth Amendment. The City sent Rogers multiple written notices of the City's need to access Rogers's water meters and its plan to impose the $100 "service fees," and Rogers received and took advantage of an opportunity to challenge the fees.

Further, Hopkins City Code § 710.30, subd. 3, authorized the City to assess the $100 "service fees" against Rogers. The statute provides that failure to permit the City to access a water meter "for inspection or repair purposes" is subject to a fine of $100 per month. Hopkins City Code § 710.30, subd. 3. Although the City Code does not define "inspection" or "repair," this Court concludes that the phrase "for inspection or repair purposes" indicates legislative intent to require water customers to allow the City to access water meters in order to bring waters meters into compliance with applicable standards. Indeed, the City Code provides that all water meters must be "compatible with

the city's meter reading system" and "must be equipped with a transponder(s) approved by the City." Hopkins City Code § 710.17, subd. 7.

This Court finds that the City's assessment of water "service charges" was legal and that the City was not unjustly enriched. As such, this Court grants the City's Motion for Summary Judgment as to Count III of Rogers's Complaint.

## II.     Class Certification

Because this Court grants the City's Motion for Summary Judgment in its entirety, Rogers's Motion for Class Certification is moot and is therefore denied.

## CONCLUSION

Rogers has failed to establish that any genuine issues of material fact remain for resolution with respect to any of the claims asserted in his Complaint. Accordingly, this Court grants the City's Motion for Summary Judgment and dismisses Rogers's lawsuit with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [11]) is **GRANTED**.

2. Defendant is entitled to judgment on all of Plaintiff's claims.

3. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

4. Plaintiff's Motion for Class Certification (Doc. No. [16]) is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 30, 2015          <u>s/Donovan W. Frank</u>
                                   DONOVAN W. FRANK
                                   United States District Judge